## DeCoursey's Estate.

*Partnership—Partnership accounting—Presumption of payment—Decedents' estates.*

Before a claim of one partner against the estate of his deceased partner can be considered in the orphans' court the accounts of the partnership must first be settled in the common pleas.

A claim by a partner against the estate of his deceased partner on duebills payable on demand and given by the firm thirty-five years before the death of the decedent, will be disallowed where there is no evidence to rebut the presumption of payment, and where it appears that during the life of the decedent a bill in equity for a partnership accounting had been filed against claimant, a decree pro confesso taken against him, his interest in the partnership sold, and the purchase money paid to him.

Argued Jan. 18, 1905. Appeal, No. 202, Jan. T., 1904, by William K. Barclay, from decree of O. C. Phila. Co., dismissing exceptions to adjudication in Estate of Samuel G. DeCoursey, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to adjudication.

PENROSE, J., filed an adjudication which was in part as follows :

Another claim which has been disallowed by the auditing judge was that of William K. Barclay, represented by Judge

Gordon and Mr. Hirst, which was presented in the following form :

" The claimant seeks to recover from the estate of the said Samuel G. DeCoursey upon the four following instruments of writing :

" ' PHILA., July 1st, 1868.

" ' Borrowed and received of William K. Barclay, Twenty thousand dollars, payable on demand with interest from date. Thirty days' notice.

" ' $20,000.                         JOHN K. BARCLAY.

" ' Interest to May 6th, 1904, $43,016.67.' "

" ' PHILA., July 1st, 1868.

" ' Due William K. Barclay, Fifty-three thousand eight hundred and ninety-seven 83/100 dollars (being balance to his credit on Private Ledger at this date) Payable on demand or in three equal installments—the first installment at sixty days, the second installment at four months, and the third installment at six months after notice, with interest from date. Value received. $53,897.83/100.

" ' BARCLAY & BARCLAY.

" ' Interest to May 6th, 1904, $115,925.25.' "

" ' PHILADA., July 15th, 1868.

" ' Borrowed and received of Wm. K. Barclay, Seven hundred and two 17/100 dollars payable on demand with interest from date, this amount being placed to his credit this day on private ledger.

" ' $702 17/100.                         BARCLAY & BARCLAY.

" ' Interest to May 6th, 1904, $1,508.60.' "

" ' Recd., Philada. Jany 14th/69 of W. K. Barclay Eleven hundred & thirty three 90/100 dollars, which has been credited to his % in Cash Book folio 319.

" ' $1,133 90/100.                         BARCLAY & BARCLAY,

" ' Per B. F. KOONS.

" ' Interest to May 6th, 1904, $2,402.35.' "

" ' Which said instruments of writing are charged against the firm of Barclay & Barclay, of which Samuel G. DeCoursey, deceased, was a member, in the books of said firm, to wit : in the ledger account of William K. Barclay.

"'William K. Barclay seeks to recover the full amount of said notes, with interest thereon from the respective dates thereof, as the same appears in the said ledger of the said firm.

"'Amount of notes, . . . . . . . .     $ 75,733 90
"'Amount of interest to May 6th, 1904,    162,852 87
                                        ──────────────
                                        $238,586 77 '"

In justification of a claim, on its face of such extraordinary character, it was said by Judge Gordon that while an ordinary note or duebill, payable on demand, would have been barred by the statute of limitations six times over, after so great a lapse of time, the law is otherwise where the instrument is payable so many days or months "after demand," the statute not beginning to run in such case until the expiration of the period after demand, and there being no limit as to the time when the demand may be made; that the firm of Barclay & Barclay was composed of John K. Barclay and the decedent, who was his brother-in-law; that the firm dissolved in 1871, John K. Barclay continuing to act as liquidating partner, and that no demand was made by the claimant until after the death of the decedent in 1903.

That the death of a partner does not relieve his estate from liability for debts of the firm, and that a partnership creditor may claim in the orphans' court against his estate, without proceeding against the surviving partner or showing his insolvency, cannot, of course, be questioned; but, as has often been said, claims maturing in the lifetime of the alleged debtor, not asserted as legal demands until his death, many years after, come before the orphans' court discredited on their face by the act of the creditor. Such claims are looked upon with great disfavor, and every intendment will be made against them. If it be conceded that the law with regard to the statute of limitations is, as between the ordinary debtor and creditor, as asserted by counsel for the claimant, which is at least questionable, it by no means follows that the creditor of a firm, holding its note payable so many days or months after demand, and knowing of its dissolution and that its affairs were in the hands of a liquidating partner for settlement—the firm being, as here, admittedly solvent, and, if not so admitted, the partner whose estate is now before the court being certainly solvent—

can forbear to make a demand against the firm or the liquidating partner, and proceed against the estate of a deceased partner thirty-six years after the date of the paper, and recover the debt with interest amounting to more than twice the original principal.

The word stale, as applied to such a claim, very inadequately characterizes it; and if it is not barred by the statute of limitations, it certainly is affected by the presumption of payment arising from lapse of time, especially when coupled with the failure to demand payment at any time during more than thirty years while the debtor, who was entirely solvent, lived.

But the evidence fully explained the course of the claimant. It was demonstrated that he was, himself, a member of the firm of Barclay & Barclay, though he now denies it, and that the amount which he claims was carried to his credit on the books of the firm, blended with other moneys arising from his share of profits, with interest, etc. This was shown not only by the positive testimony of John K. Barclay and by the books of the firm, as pointed out by the convincing testimony of Mr. Goldsmith, but by an affidavit of defense filed in October, 1890, by the claimant in a suit upon a promissory note given by him to J. H. Grier, in which he alleged that the money was borrowed for the firm of Barclay & Barclay of which he was a member; this being repeated by him when called as a witness at the trial of the suit, when in answer to the question, Are you a member of the firm of Barclay & Barclay? he said that he was; that the firm consisted of John K. Barclay, Samuel G. DeCoursey, and himself; that there was no written partnership agreement; that his share of the profits was one third; and that he was to bear one third of the losses. Whether solemn admissions under oath are or are not conclusive as between the party making them and a third person (see Greenleaf on Evidence, sec. 27), need not be considered; they are certainly very strong evidence against him, and completely destroy the credibility of any subsequent statement contrary to what he has thus sworn to. Allegans contraria non est audiendus.

But this is by no means all: A letter from the claimant to the decedent, dated September 11, 1875, found among the papers of the latter, was produced in evidence, which was as follows:

"Dear Samuel: John having expressed his dissatisfaction with the results of the method or want of method with which I have endeavored to retain the semblance of a business, his determination not to perform any part of the labor, and his avowal that he was making more money by speculating in stocks or in some way unknown to me, and that he desired a dissolution of his business relations at least with me, I propose, I, That from and after July 1, 1875, he shall be an inactive or silent partner and draw a two ninths interest, or II. That if he desires to be relieved entirely and you are willing to remain with me, you and myself shall wind up and settle the present business, or III, if he prefers to continue in business and you elect to go with him, that you and he may settle the business with me away. You have witnessed the frequent threats made by him within the past three years, that he was going to dissolve the concern. They were made by a brother and in the midst of other family entanglements. They would have been differently met had they come from a stranger. But the memory of them has impaired my confidence in his support and affected my energies. I naturally seek a cessation or relief from them. I would thank you to come to an early conclusion with him and let me know. Yours respectfully, W. K."

This appears to have been a mere ebullition, and the business continued, without change, until 1890, when it ceased operations altogether, and from that time the decedent, at least, appears to have had no further connection with it.

It would seem from the evidence that the business of the firm in the first instance was the manufacture of linseed oil, but that was gradually abandoned, and after 1871, so far as the auditing judge can understand, their transactions appear to have been only with regard to the purchase and sale of securities.

That a surviving member of a partnership must proceed by bill in equity in the common pleas for a settlement of partnership accounts, and that he cannot come, without having done this, into the orphans' court against the estate of his deceased partner, scarcely requires the citation of authority. The subject is considered in Miller's Estate, 22 W. N. C. 11, affirmed on appeal; Weigley's Appeal, 136 Pa. 349. See also Weigley v. Coffman, 144 Pa. 489. Hence, if for no other reason, this claim,

which involves the settlement of a partnership account, would have to be dismissed for want of jurisdiction.

But a bill for an account actually was filed by John K. Barclay, in 1896, in the court of common pleas, No. 2, against William K. Barclay and Samuel G. DeCoursey, in which a decree pro confesso was taken against William K. Barclay, and defense was made by Samuel G. DeCoursey, and the matter appears to have been referred to a master. But judgment having been obtained by Mr. Grier in the suit against William K. Barclay, the interest of the latter in the firm of Barclay & Barclay was levied on and subsequently sold to Thomas Ross, the executor of the plaintiff; and after the death of Mr. DeCoursey, viz.: by agreement dated July 11, 1903, between the accountant as administrator, John K. Barclay and Thomas Ross, executor of the purchaser of William K. Barclay's interest in the firm, the proceeding was settled by the payment by the administrator of $25,000 in full of all demands arising out of the affairs of the late firm, and the suit was discontinued.

Thus, it would seem, all possibility of right on the part of William K. Barclay as against the firm of which he was a member or as against either of his former partners has been completely eliminated.

The court dismissed exceptions to the adjudication, ASHMAN, J., filing the following opinion.

The claim whose disallowance is the subject of exception, was based upon three duebills issued by Barclay & Barclay in favor of the decedent, dated in 1868, and a receipt dated in 1869, the aggregate amount of the instruments being $75,733.90, with interest, $162,852.87, making a total of $238,586.77. Two of the duebills were payable on demand, and one on thirty days' notice. No demand having been shown to have been made, it was claimed that the statute of limitations had not begun to run, and that the estate of the decedent, who, at the date of the duebills, and for years afterwards, was a member of the debtor firm, was liable. The presumption of payment, however, is so violent where a claim has outlived the life of a generation, that without going further, the auditing judge would have been justified in dismissing the demand as hopelessly stale. He rejected it upon the stronger ground that the

claimant was himself a member of the firm of Barclay & Barclay. The proof of this fact approached demonstration; it was apparent on the firm's books, wherein he was credited with a share of the profits; by his own affidavit of defense in an action against him in 1890, where he set up that the money in suit was borrowed for the firm of Barclay & Barclay, and that he was a member of that firm; and by his correspondence with this decedent, in which he hinted at a dissolution of the partnership, and proposed to sell his interest therein to the other partners. The claim, therefore, is made by one partner against the estate of a deceased copartner, and requires, before it can be considered in this court, that the accounts of the partnership should first have been settled in the common pleas. Such an accounting was actually had upon a bill in equity filed in 1895 by John K. Barclay against the present claimant and the decedent, in which a decree pro confesso was taken against the claimant. Before final hearing, the judgment having been obtained against the claimant, his interest in the firm was sold and the sum of $25,000 was paid in full settlement. Further comment would be useless.

The exceptions are dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*John G. Johnson*, with him *A. A. Hirst*, for appellant.

*George Wharton Pepper*, with him *W. B. Bodine, Jr., H. Gordon McCouch* and *John Cadwalader, Jr.*, for appellee.

PER CURIAM, March 6, 1905:
The decree is affirmed on the opinion of the court below.